**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

MONICA SALGUERO TRATURYK,

    Plaintiff/Counter-Defendant,

v.                                                            Case No:  6:15-cv-1347-Orl-40TBS

WESTERN-SOUTHERN LIFE
ASSURANCE COMPANY,

    Defendant/Counter-Plaintiff.

**ORDER**

This cause comes before the Court without oral argument on Defendant's Motion for Summary Judgment and Memorandum of Law in Support (Doc. 42), filed May 2, 2016. Plaintiff responded in opposition on May 16, 2016 (Doc. 46), and Defendant replied on May 26, 2016 (Doc. 47). Upon consideration and review of the record, including all pleadings, deposition transcripts, affidavits, exhibits, and memoranda of the respective parties, the Court denies Defendant's Motion for Summary Judgment.

**I.    BACKGROUND[1]**

This insurance contract dispute arises out of Defendant's, Western-Southern Life Assurance Company ("Western-Southern"), refusal to pay life insurance benefits to Plaintiff, Monica Salguero Traturyk ("Traturyk"). On June 12, 1994, Western-Southern issued a $60,000 life insurance policy (the "Policy") to Traturyk's mother, Elba Salguero, under which Traturyk was named as beneficiary. In 2013, Western-Southern terminated

---

[1] Unless otherwise indicated, this account of the facts is taken from the parties' Stipulation of Agreed Material Facts (Doc. 45) or from their respective briefs where no factual dispute is indicated.

the Policy due to non-payment of the premiums.  Mrs. Salguero subsequently remedied her delinquency and applied to reinstate the Policy in January 2014.

In her application for reinstatement, Western-Southern asked Mrs. Salguero three questions which form the focal point of this lawsuit.  First, Question 17 asked:

> In the past five years, has the Insured, Insured Spouse, or anyone proposed for this insurance been treated or examined in a hospital or other health care facility or by a doctor or other licensed or certified health care worker; or been advised to have any surgical operation, x-ray, electrocardiogram, or other test(s)?

In response, Mrs. Salguero checked the "Yes" box and wrote in the space immediately following Question 17, "urinary tract infection ([undecipherable writing] only) during 8 hr shift work – evening."  Second, Question 18 asked:

> In the past ten years, has the Insured, Insured Spouse, or anyone proposed for this insurance had or been treated for any abnormality or disease of heart, lungs, kidneys, or any other part of the body; or had or been treated for high blood pressure, diabetes, stroke, cancer or a mental health or nervous condition?

In response, Mrs. Salguero checked the "Yes" box and wrote in the space immediately following Question 18, "High Blood Pressured – controlled by meds."  Finally, Question 22 asked Mrs. Salguero to "[g]ive details of all YES answers to the Questions above."  In response, Mrs. Salguero wrote, "[Refin. Home Morg.] no longer working at night, slowed down, able take better care of health.  Daughter cooks meals for Mom.  • past urinary tract infections only  • hypertension/high blood pressure – controlled with med. (no problems) AT home now, working on projects, very relaxed + healthy."  (alterations and mistakes in original).   Upon executing the reinstatement application, Mrs. Salguero agreed as follows:

2

> **I (WE) HAVE CAREFULLY REVIEWED EACH AND EVERY STATEMENT AND ANSWER ON PAGES 1, 2 AND 3 OF THIS APPICATION AND REPRESENT THAT THEY ARE TRUE AND COMPLETE TO THE BEST OF MY (OUR) KNOWLEDGE AND BELIEF.**

Upon reviewing the application for reinstatement and conducting a telephone interview with Mrs. Salguero, Western-Southern reinstated the Policy on March 19, 2014. Mrs. Salguero passed away on June 19, 2014 and Traturyk filed a claim to recover the Policy benefit. In a letter dated September 23, 2014, Western-Southern denied Traturyk's claim for benefits. (Doc. 42-16). Western-Southern explained that it had discovered that Mrs. Salguero made material misrepresentations regarding the state of her health in her application for reinstatement. (*Id.*). As a result, Western-Southern rescinded the Policy and represented that its only obligation under was to refund the premiums paid from the date of reinstatement. (*Id.*).

Traturyk initiated this lawsuit in state court on June 29, 2015 and Western-Southern removed the action to this Court based on diversity of citizenship. Traturyk's Complaint alleges one count for breach of contract due to Western-Southern's failure to pay life insurance benefits under the Policy. Western-Southern additionally countersues Traturyk for rescission of contract and for a declaration confirming that it properly rescinded the Policy. Western-Southern now moves for summary judgment.

## II.     STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment must "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory

3

answers, or other materials" to support its position that it is entitled to summary judgment. Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials," but may also consider any other material in the record. Fed. R. Civ. P. 56(c)(3).

An issue of fact is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law. *Id.* The moving party bears the initial burden of identifying those portions of the record demonstrating a lack of genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). If the movant shows that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to demonstrate that there are, in fact, genuine factual disputes which preclude judgment as a matter of law. *Celotex*, 477 U.S. at 325; *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006), *cert. denied*, 549 U.S. 996 (2006).

To satisfy its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the non-movant must go beyond the pleadings and "identify affirmative evidence" which creates a genuine dispute of material fact. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998). In determining whether a genuine dispute of material fact exists, the court must read the evidence and draw all factual inferences therefrom in the light most favorable to the non-moving party and must resolve any reasonable doubts in the non-movant's favor. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007). Summary judgment should only be granted

"[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita*, 475 U.S. at 587.

## III. DISCUSSION

In Florida, section 627.409, Florida Statutes, governs when a life insurance company may deny coverage on a life insurance policy:

> [A] misrepresentation, omission, concealment of fact, or incorrect statement may prevent recovery under the contract or policy only if any of the following apply:
>
> (a) The misrepresentation, omission, concealment of fact, or incorrect statement is fraudulent or is material to the acceptance of the risk or to the hazard assumed by the insurer.
>
> (b) If the true facts had been known to the insurer pursuant to a policy requirement or other requirement, the insurer in good faith would not have issued the policy or contract, would not have issued it at the same premium rate, would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss.

Fla. Stat. § 627.409(1). Ordinarily, an insurer need not prove that a misrepresentation or omission was made with an intent to deceive in order to deny coverage for either reason enumerated by section 627.409. *Simmons v. Conseco Life Ins. Co.*, 170 F. Supp. 2d 1215, 1222 (M.D. Fla. 2001). However, "[w]hen, as here, the insurance application contains 'knowledge and belief' language—that is, a provision stating that the information is accurate to the best of the applicant's knowledge and belief, the insurer must show that the insured intentionally made the misstatement or omission to rescind the contract." *Joseph v. Zurich Life Ins. Co. of Am.*, 159 F. App'x 114, 117 n.3 (11th Cir. 2005) (per curiam). Whether the insured intentionally made a misrepresentation or omission is a question of fact reserved for the jury unless the evidence is undisputed that the insured

5

intended to deceive her insurer. *Metro. Life Ins. Co. v. Fugate*, 313 F.2d 788, 792–93 (5th Cir. 1963).[2] Moreover, "[w]here an insurer is on notice that it must itself make further inquiries about an insured's health, it is bound by what a reasonable investigation would have shown." *Cox v. Am. Pioneer Life Ins. Co.*, 626 So. 2d 243, 246 (Fla. Dist. Ct. App. 1993), *review denied*, 637 So. 2d 233 (Fla. 1994).

Western-Southern moves for summary judgment on the grounds that it properly rescinded the Policy. In its motion, Western-Southern identifies five misrepresentations or omissions which it contends justify its denial of coverage under section 627.409. However, upon review of the record with regard to each asserted misrepresentation or omission, the Court finds that there are genuine factual disputes which preclude the entry of summary judgment.

First, Western-Southern states that Mrs. Salguero failed to disclose that she had been hospitalized three times within the five years preceding her application for reinstatement. Western-Southern specifically hinges its argument on its telephone interview with Mrs. Salguero in which she answered negatively when asked if she had been hospitalized in the last ten years. (*See* Doc. 42-17, 20:10–16). However, Western-Southern ignores that Mrs. Salguero answered "Yes" on her reinstatement application to Question 17, which asked whether she had been hospitalized in the last five years. (Doc. 42-5, p. 4). In the space immediately following this question, Mrs. Salguero wrote, "urinary tract infection." (*Id.*). Then, in response to Question 22 which asked to give details to all "Yes" answers, Mrs. Salguero again wrote, "past urinary tract infections only."

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit that were handed down prior to October 1, 1981.

6

(*Id.*). Mrs. Salguero's medical records reveal that, although Mrs. Salguero received various treatments during her hospitalizations, the reason for two of her hospitalizations was that she had contracted severe urinary tract infections. (Doc. 42-8, pp. 56, 92). Based on this conflicting evidence, a reasonable jury could conclude that Mrs. Salguero did disclose that she had been hospitalized within the last five years as requested by Western-Southern's reinstatement application and that any omission on her part was not intentional. For the same reason, a reasonable jury could conclude that Mrs. Salguero placed Western-Southern on sufficient notice that she had been hospitalized for urinary tract infections, thus requiring Western-Southern to perform a reasonable investigation of the circumstances causing these hospitalizations.

Second, Western-Southern asserts that Mrs. Salguero failed to disclose that she had chronic kidney disease and had been hospitalized for this condition as required by both Questions 17 and 18. However, Mrs. Salguero's medical records do not indicate that she was ever hospitalized or treated for chronic kidney disease. To the contrary, the medical records reflect that Mrs. Salguero "does not know if she has any chronic kidney disease" and that "underlying [chronic kidney disease] cannot be ruled out." (Doc. 42-8, pp. 59–60). With this contradictory evidence, a reasonable jury could conclude that Mrs. Salguero never misrepresented or omitted information regarding chronic kidney disease.

Third, Western-Southern contends that Mrs. Salguero failed to disclose that she had undergone an electrocardiogram ("ECG") as requested by Question 17. There is again no record evidence, however, showing that Mrs. Salguero intentionally failed to disclose this fact. As Traturyk pointed out in her deposition, her mother was required to undergo the ECG as part of the screening and treatment of her urinary tract infections,

not because there was any particular concern regarding her heart.  (Doc. 42-18, 54:4–15).  Moreover, the doctors treating Mrs. Salguero in the hospital never advised that there was an issue with the ECG results.  (*Id.* at 56:1–5).  From this evidence, a reasonable jury could conclude that Mrs. Salguero did not intentionally omit her ECG, but that she may not have remembered a procedure which she deemed inconsequential to her health.

Fourth, Western-Southern asserts that Mrs. Salguero failed to disclose that she had been "diagnosed with elevated glucose readings." (Doc. 42, p. 12).  However, based on the Court's review of Mrs. Salguero's medical records, she was never "diagnosed with elevated glucose readings" or any other ailment related to blood glucose levels; rather, all the medical records reflect are occasional elevated glucose readings in bloodwork conducted during her various hospitalizations.  (*See* Doc. 42-8).  As Traturyk emphasizes in her response, only if Mrs. Salguero were a medical professional familiar with reading medical records would she have discovered that she occasionally experienced elevated blood glucose levels.  Further, Western-Southern points to no question in either Mrs. Salguero's application for reinstatement or in the subsequent phone interview in which Western-Southern requested information about blood glucose levels.  Western-Southern cannot now complain that it did not receive information which it never requested.[3]  Based

---

[3]  Question 17 could conceivably cover a request for blood glucose tests under its "other test(s)" clause.  However, controlling case law supports the notion that such a clause does not require an applicant to disclose every single test or examination he or she has been subjected to, but only requires disclosure of significant tests.  *See Hyman v. Life Ins. Co. of N. Am.*, 481 F.2d 441, 444 (5th Cir. 1973) (holding that clause in life insurance application which requested information on "any illness" only requires disclosure of "any appreciable disorder").  There is no evidence in the record indicating the Mrs. Salguero's blood glucose readings were anything other than a small part of an expansive and routine blood panel.

on the record, a reasonable jury could conclude that Mrs. Salguero did not make a material misrepresentation or omission regarding her blood glucose levels.

Fifth, Western-Southern submits that Mrs. Salguero failed to disclose a material change in her health which occurred after she submitted her application for reinstatement but before Western-Southern reinstated the Policy—specifically, that Mrs. Salguero suffered a stroke on February 21, 2014.  Assuming Mrs. Salguero owed either a legal or a contractual duty to update her reinstatement application, the record evidence demonstrates genuine factual disputes as to whether Western-Southern would have found such a change in Mrs. Salguero's health to be material and whether Western-Southern would have issued the Policy had it known of the stroke.  Western-Southern's September 23, 2014 denial letter does not cite Mrs. Salguero's stroke as a reason for denying coverage, despite the fact that Western-Southern had conducted a thorough investigation of Mrs. Salguero's health history including, presumably, her stroke six months earlier.  (*See* Doc. 42-16).  Western-Southern's Claim Investigation Memo in which it opines as to what it would have done had it known of certain information is similarly silent with respect to Mrs. Salguero's stroke.  (*See* Doc. 42-9).  Moreover, Western-Southern's underwriting guidelines do not indicate that an applicant's history of stroke necessarily precludes coverage; instead, the guidelines advise that other information must be assessed, such as the applicant's age, type of stroke, severity of stroke, and other risk factors.  (*See* Doc. 42-15).  With this evidence, genuine factual disputes exist as to the materiality of Mrs. Salguero's stroke to Western-Southern's decision to reinstate the Policy and whether Western-Southern would have still reinstated the Policy even had it known of the stroke.

As a final matter, summary judgment is also inappropriate in this case because a genuine factual dispute exists as to whether Western-Southern properly completed its rescission of the Policy.  Although Western-Southern's alleged right to rescind the Policy arises under section 627.409, it is well-established that "[this] statute does not modify the common law principle which requires that the parties be restored to the status quo." *Gonzalez v. Eagle Ins. Co.*, 948 So. 2d 1, 3 (Fla. Dist. Ct. App. 2006).  In the context of a rescinded insurance policy, this means that the insurer must unwind the parties' contractual obligations by refunding all premiums paid by the insured for the insurance policy and to do so within a reasonable time after discovering the grounds warranting rescission.  *Id.*  Here, Western-Southern's denial letter states that it was refunding $1,356.22 in premiums due to its denial of Traturyk's claim for benefits.  (Doc. 42-16, p. 5). Upon review of both Mrs. Salguero's original application for life insurance, (Doc. 42-4), and her application for reinstatement, (Doc. 42-5), this amount appears to only cover the value of premiums paid from the date of reinstatement.  Under Florida law, it is axiomatic that the reinstatement of an insurance policy constitutes the insurer's waiver of any default which caused the policy to lapse or terminate, and operates to continue the parties' contractual obligations as if the default had never occurred.  *Winer v. N.Y. Life Ins. Co.*, 190 So. 894, 899 (Fla. 1938); *N.Y. Life Ins. Co. v. Tedder*, 153 So. 145, 148 (Fla. 1933).  As a result, even if Western-Southern were entitled to rescind Mrs. Salguero's Policy for either of the reasons enumerated by section 627.409, Western-Southern was required to refund all premiums paid since the Policy was originated in 1994.  Since Western-Southern did not do so, it is not entitled to rescission at this time.

**IV.     CONCLUSION**

For the aforementioned reasons, it is **ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment (Doc. 42) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on August 16, 2016.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record

11